**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CIVIL ACTION NO. 21-125-DLB-CJS

SARAH YORK                                                                              **PLAINTIFF**


v.                              <u>**MEMORANDUM OPINION AND ORDER**</u>


SAINT ELIZABETH MEDICAL CENTER, INC.                           **DEFENDANT**

****************

This matter is before the Court upon Plaintiff's Motion for Class Certification.  (Doc. # 78).  Defendant having filed its Response (Doc. # 82), and Plaintiff having filed her Reply (Doc. # 92), this Motion is ripe for review.  For the following reasons, this Motion is **denied**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Sarah York brought this putative class action alleging that Defendant engaged in fraudulent billing.  Plaintiff alleges in the Amended Complaint that she is "one of thousands of patients who received a bill from St. Elizabeth that was inflated" based on the charges she should have incurred for her care.  (*Id.* at 1).  On May 6, 2021, Plaintiff delivered a baby at St. Elizabeth.  (*Id.* ¶ 28).  She received two bills from St. Elizabeth for her stay from May 6 to May 7, 2021.  (*Id.* ¶ 29).  The first bill was for a total charge of $15,136.37, $11,250.54 of which was paid by Plaintiff's insurer, United Health Care ("UHC").  (*Id.* ¶ 30).  The second bill was for a total of $4,497.71, $1,066.34 of which was

paid by UHC.  (*Id.* ¶ 32).  Plaintiff alleges the "true charges" of these bills were $8,452.03 and $2,590.37, respectively.  (*Id.* ¶¶ 30, 32).

Plaintiff alleges these bills were inflated based upon an "all-inclusive billing" policy at St. Elizabeth.  (*Id.* ¶ 34).  In support, Plaintiff alleges facts based on information purportedly gathered from Valerie Rose.  Rose worked at St. Elizabeth from 2007 to 2021 as a Revenue Enhancement Analyst and later as a Revenue Integrity Analyst.  (*Id.* ¶¶ 8-9).  In this role, Rose reviewed medical documents, hospital billing records, the appropriateness of services rendered to patients, validated coding accuracy, and performed insurance audits.  (*Id.* ¶¶ 10, 12).

Plaintiff alleges that an internal meeting at St. Elizabeth was called because "a patient called and said that she had 'delivered a baby at St. Elizabeth'" and she didn't understand why her bill was "like over $30,000" for a two-night stay.  (*Id.* ¶ 15).  Rose allegedly looked at this patient's file and did not think the $28,000 charge seemed "correct, allowed by contract, or lawful." (*Id.* ¶ 16).  However, Rose was allegedly told by Bill Banks, Vice President of Managed Care at St. Elizabeth, that this charge is part of St. Elizabeth's "all-inclusive billing."  (*Id.* ¶¶ 11, 18).  Plaintiff alleges that Defendant's actions taken to implement its all-inclusive billing policy are fraudulent, illegal, and violate the contracts and agreements between the parties.  (*Id.* ¶ 20).

The extensive procedural history in this case was recently reviewed in detail by Magistrate Judge Candace J. Smith in her March 29, 2024 Memorandum Order addressing multiple additional filings by Plaintiff.  (*See* Doc. # 97).  In the Order, Judge Smith noted the many delays in discovery caused by class counsel.  In denying Plaintiff's

Motion to File a Second Amended Complaint, Judge Smith highlighted "York's lack of diligence in pursuing the discovery depositions." (*Id.* at 23).

Most relevant to this Motion is the procedural history that reflects that Plaintiff has a professional relationship with class counsel. On September 22, 2021, the original Complaint was filed by Dominick Romeo of Deters Law. (*See* Doc. # 1-1 at 23). Plaintiff testified that at that time, she was a paralegal at Deters Law. (Doc. # 61 at 61-62). Plaintiff had worked at Deters Law since 2011. (*Id.* at 66). Mr. Romeo subsequently filed the First Amended Class Action Complaint ("Amended Complaint") on August 1, 2022,[1] (Doc. # 19 at 21), which had the effect of dismissing the Individual Defendants identified in the original Complaint. (*See* Doc. # 18). The Amended Complaint stated that "Class counsel is Deters Law Firm II and Alan Statman." (Doc. # 19 ¶ 51). However, the undersigned attorney was still Dominick Romeo of Deters Law. (*Id.* at 21).

On January 5, 2024, over two years after the case was initiated, Plaintiff filed her Motion for Class Certification. Plaintiff seeks certification of the following class:

> Plaintiff and all current and former patients of St. Elizabeth Medical Center, Inc., who were private payers or whose bills were paid in full or in part by a private insurance payor, whose bills were inflated, by the addition of variable charge so as to match a selected reimbursement rated for Diagnosis-Related Groups ("DRG") through "All-Inclusive Billing" (excluding members of the Court and its staff, and Counsel for Plaintiffs and their staffs, Counsel for Defendant and its staff, and Board members, Officers, and Employees of Defendant)."

---

[1]     This Amended Complaint is the operative pleading for purposes of this Motion. In her Motion for Class Certification, Plaintiff references the Proposed Modified Second Amended Complaint under the assumption that the Court would grant leave to file it. (Doc. # 78 at 1, n. 1). However, Magistrate Judge Candace J. Smith mostly denied this request. (*See* Doc. # 97 at 27). In her Order, Judge Smith only granted this request for the limited purpose of omitting the COVID-19 and negligence per se claims of relief. (*Id.*).

(Doc. # 78 at 1).   Plaintiff alleges the following claims are common to the class: (1) promissory estoppel; (2) unjust enrichment; (3) conversion; (4) violations of the Kentucky Consumer Protection Act; (5) fraud; and (6) declaratory and injunctive relief.

## II.   ANALYSIS

### A.   Standard of Review

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (*quoting Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  Rule 23 "serves as the gatekeeper to class certification" by setting forth the requirements that must be met to justify certification.  *In Re Ford Motor Co.*, 86 F.4th 723, 726 (6th Cir. 2023).ǃHowever, "Rule 23 does not set forth a mere pleading standard."  *Dukes*, 564 U.S. at 350.  Rather, the party seeking certification must "affirmatively demonstrate his compliance with the Rule."  *Id*.  This "requires a named plaintiff to offer '[s]ignificant' evidentiary proof that he can meet all [Rule 23 requirements], where they are contested." *In Re Ford Motor Co.*, 86 F.4th 723, 726 (6th Cir. 2023) (internal citations omitted).

"A district court has broad discretion to decide whether to certify a class."  *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996)).  Certification is "proper only if 'the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Dukes*, 564 U.S. at 350-51 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982)).  Such a "rigorous analysis" will often "entail some overlap with the merits of the plaintiff's underlying claim."  *Id.* at 351; *see also Falcon*, 457 U.S. at 160 ("[T]he class determination

generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.").  However, district courts must not "engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).  "Merits questions may be considered to the extent–but only to the extent–that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.*

To succeed on her Motion for Class Certification, Plaintiff must satisfy the requirements of both Rule 23(a) and Rule 23(b)(3).  Under Rule 23(a), Plaintiff "must show that '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'"  *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (quoting Fed. R. Civ. P. 23(a)).   "These four requirements—numerosity, commonality, typicality, and adequate representation—serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members.  *Id.* (citing *Dukes*, 131 S.Ct. at 2550).  This requires "actual, not presumed, conformance with Rule 23(a)."  *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012) (quoting *Falcon*, 457 U.S.  at 160).

In addition to meeting the requirements of Rule 23(a), a Plaintiff moving to certify a 23(b)(3) class must show that "'the questions of law or fact common to class members predominate over any questions affecting only individual members' and that the class

action is 'superior to other available methods' to adjudicate the controversy fairly and efficiently.'" *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013) (quoting Rule 23(b)(3)).

The parties point to several factual disputes in the record and procedural history of this case. Any "[f]actual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008), *as amended* (Jan. 16, 2009). This means that in order to certify a class, "the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *Id.* (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir.2008)). Unlike a 12(b)(6) motion or motion for summary judgment, the district court does not accept plaintiff's allegations as true and resolve any doubts in the plaintiff's favor on a motion for class certification. *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012). Any dispute of fact that goes to the merits of the case beyond the question of class certification will not be considered at this juncture.

Federal courts sitting in diversity apply the Federal Rules of Civil Procedure. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). But the federal court applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 566 (6th Cir. 2001) (citations omitted). Therefore, Kentucky law applies to the substantive claims raised by Plaintiff.

## B.    Discussion

As noted above, Plaintiff seeks to certify the following class:

Plaintiff and all current and former patients of St. Elizabeth Medical Center, Inc., who were private payers or whose bills were paid in full or in part by a

private insurance payor, whose bills were inflated, by the addition of variable charge so as to match a selected reimbursement rated for Diagnosis-Related Groups ("DRG") through "All-Inclusive Billing" (excluding members of the Court and its staff, and Counsel for Plaintiffs and their staffs, Counsel for Defendant and its staff, and Board members, Officers, and Employees of Defendant).

(Doc. # 78 at 1).  Plaintiff asserts this is a class comprising of "more than 18,000 Class Members receiving variable charges on their bills under the new billing scheme."  (Doc. # 78 at 20).  For the reasons that follow, the Court concludes the Rule 23 requirements have not been met for this class, so the motion will be **denied**.

### 1.  *Numerosity and Commonality*

Defendant does not contest the requirements of numerosity and commonality. Defendant argues Plaintiff has failed to demonstrate the remaining five elements required to certify a Rule 23(b)(3) class: typicality, adequate representation, predominance of common questions, superiority, and ascertainability.  Because the parties do not dispute that numerosity and commonality are met, the Court will not address these two elements and instead move to the contested elements of Rule 23.

### 2.  *Typicality*

"Rule 23(a)(3) typicality 'determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'"  *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399).  "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'"  *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (citations omitted).  This requirement ensures that "the representatives' interests are aligned with the interests of the represented class

7

members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852-53.  In summary, "[a]s goes the claim of the named plaintiff, so go the claims of the class." *Id.*

Plaintiff argues typicality is met because "the contractual claims of the Named Plaintiff and Class Members are identical and arise from the same scheme." (Doc. # 78 at 25).  Specifically, this is because the class members were "all inpatients at SEMC" who were "subject to the same billing policies and procedures" and were "injured by Defendant in the same manner." (*Id.*).  This is an odd argument because there are no "contractual claims" alleged by the Plaintiff.  But even assuming Plaintiff meant the claims that are alleged, this common scheme is not sufficient to satisfy the typicality requirement.

The Sixth Circuit has held that typicality is not met where there are discrepancies between class members and their individualized circumstances and transactions.  *See Stout,* 228 F.3d at 717.  In *Stout,* the proposed class included "all persons who purchased an automobile from Docherty Motors that was financed by CNAC between 1993 and the present." *Id.*  There, the district court found typicality was not met because of the number of discrepancies between the plaintiff and class members, such as "the type of car, the degree of repairs necessitated, the response to those repairs, the purpose for which the car was purchased, the individual circumstances and transactions surrounding each purchase including each class member's understanding of the terms and conditions of their purchase agreements, and the extent of the injury suffered." *Id.*  The Sixth Circuit reasoned that these discrepancies were significant because the "[p]laintiffs' claims rest[ed] on their understanding of the purchasing transaction and each buyer's understanding of the terms." *Stout*, 228 F.3d at 717.

Here, there are similarly several variables that are different between the class members, which defeats typicality.  The various discrepancies within the class include the type of medical care received by each member, the reason for the care, the effect of the billing scheme on the member's bill, and what information they had about what they might be charged.  Just like in *Stout*, each patient's understanding of the billing arrangement may be different.  Plaintiff has amended the class definition multiple times to address these discrepancies.[2]  Given the differences in variables that would have affected each patient's bills and their understanding of how they would be billed, it cannot be said that the claims of the class will rise and fall together, as is required to certify a class under Rule 23.  *See Stout*, 228 F.3d at 717.  Additionally, much of Plaintiff's claims are based on what she believed she would be charged for the childbirth based on the births of her first two children.  (*See* Doc. # 61 at 111-113).  This is extremely personal to the Plaintiff.  And "the typicality requirement is not satisfied when a plaintiff can prove his own claim but not 'necessarily have proved anybody's else's claim.'"  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (internal quotations and citations omitted).  For these reasons, the typicality requirement of Rule 23(a) is not met.

### 3. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Beattie*, 511 F.3d at 564

---

[2]     At one point the class definition included "All current and former patients of St. Elizabeth Medical Center, Inc., who were private payors or whose bills were paid in full or in part by a private insurance payor, whose bills were inflated, adjusted, or manipulated so as to match the maximum reimbursement rated for Diagnosis-Related Groups ("DRG") . . ."  This class would have included two groups of patients—those who benefitted from the all-inclusive pricing because their bills would have been adjusted downwards, and those who did not.  While the current class definition no longer includes patients whose accounts were adjusted downwards, this shows that different patients are affected very differently by the billing scheme.

(internal citations omitted). To certify a 23(b)(3) class, a plaintiff must establish that "issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012) (citations omitted). "While the commonality element of Rule 23(a)(2) requires showing one question of law or fact common to the class, a Rule 23(b)(3) class must show that common questions will predominate over individual ones." *Young*, 693 F.3d at 544. A common question is one where "the same evidence will suffice for each member to make a prima facie showing" of the applicable claim. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017). Defendant does not dispute whether the commonality requirement has been met. (*See* Doc. # 82 at 18). However, even if this requirement is satisfied, "the predominance criterion is far more demanding." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

"[T]he key is to "identify[ ] the substantive issues that will control the outcome" of the case. *Sandusky Wellness Ctr.*, 863 F.3d at 468 (citing *Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 326 (5th Cir. 2008)) (quotation marks omitted). Plaintiff argues the common issue of whether Defendant arbitrarily added a variable, unsupported charge to each bill predominates over individual issues. (*See* Doc. # 78 at 24). Plaintiff further states that "[m]inor factual distinctions in the amounts billed to each patient are irrelevant, so long as each Class Member was subject to the same method of inflated billing." (*Id.*). Defendant responds that there are three reasons why predominance is not met: First, the predominate issue is "the individualized question of whether class members were aware or unaware of what they would be charged." Second, there is an individualized issue of

reliance.   Finally, the issue of whether class members are entitled to damages for aggravation and emotional distress is an individual question.  (Doc. # 82 at 23-26).

### i.   Awareness

Defendant first argues that the key factual issue is awareness of the allegedly improper billing, and that this defeats predominance because there may be differences in whether specific class members were aware of the all-inclusive pricing.  In Reply, Plaintiff argues that awareness is irrelevant because there are factors common to the class such as the fact that "1) Defendant did not inform the patients about using a new pricing scheme; 2) nor about DRG pricing and how to find it; 3) nor that most persons bills would go up, often by a lot, and 4) actively concealed the charge on its patient lists of services." On this basis Plaintiff argues "it is clear that the fact-finder is entitled to presume unawareness."  (Doc. # 92 at 15).  However, the Court is unaware of any authority that supports this presumption, and Plaintiff has cited to no such authority.

If Plaintiff had visited the St. Elizabeth website prior to her visit, she would have seen the applicable charges.  The charges on the website directly matched the charges Plaintiff was ultimately billed for her visit.  (*See* Doc. # 61 at 238-39) (screenshots from the St. Elizabeth website).  Plaintiff admitted during her deposition that the reason she did not consult the St. Elizabeth website, or inquire into pricing at all, was because she "had a baseline since [she] had a baby in 2015 and [she] had a baby in 2017," and "knew what [she] paid for both of them."  (Doc. # 61 at 112).  She went on to testify that the charges are "fraudulent to me."  (*Id.* at 116).  And in her Amended Compliant, Plaintiff stated that in support of her Kentucky Consumer Protection Act Claim, "[h]ad Plaintiff been aware that St. Elizabeth's representations set forth above were untrue, Plaintiff

would not have used their services and the services of St. Elizabeth." (Doc. # 19 ¶ 84). Plaintiff cannot now state that awareness is not a relevant or an individualized factor. *See Sandusky Wellness Ctr., LLC*, 863 F.3d at 466 ("individualized questions of consent prevent common questions from predominating under Rule 23(b)(3)").

### ii.    Reliance

Reliance is an element of Plaintiff's fraud, promissory estoppel, and Kentucky Consumer Protection Act claims that requires individualized proof. A proper analysis of a motion for class certification requires the court to consider which elements of the claims can be established on a class-wide basis and which would require proof for each of the class members. *Woodall v. Wayne Cnty., Michigan*, No. 20-1705, 2021 WL 5298537, at *7 (6th Cir. Nov. 15, 2021).

Here, whether Plaintiff relied on the alleged misrepresentation by St. Elizabeth is an individualized question that predominates because it will drive the outcome of her claims. *See Dukes*, 564 U.S. at 350 (internal quotation marks and citation omitted) ("What matters to class certification . . . is not the raising of common questions -- even in droves -- but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). Plaintiff's responses in her deposition are telling. When Plaintiff was asked about whether Defendant made any statements to her regarding what she may be charged, she answered "No." (Doc. # 61 at 150). Nor did she ask what she may be charged prior to receiving care. (*Id.*). But if there are class members to whom St. Elizabeth had made any statements or representations, they would be bound to the outcome of this case even though the outcome of their case may have been different had they proceeded individually. This is because a "plaintiff's failure to

prove an essential element of the claim will cause the class to 'fail in its entirety.'"  *See Woodall*, 2021 WL 5298537, at *5 (internal quotation marks and citation omitted).

In Reply, Plaintiff argues reliance is "clearly" irrelevant under a failure to disclose theory.  (*See* Doc. # 92 at 14).  However, as has frequently been the case during this litigation, Plaintiff does not cite any authority for this assertion, nor does she elaborate further.  And where reliance is the "factual core" of a case, individual questions may predominate.  *See Stout*, 228 F.3d at 718.  In *Stout*, the district court had determined that the "factual core" of the case was "whether each putative class member relied upon false representations or failures to disclose, and if so, what damages were proximately caused by that reliance."  *Id.*  Given the fact that any resolution of the fraud or Truth In Lending Act claims required such an individual assessment, the Sixth Circuit upheld the district court's denial of class certification.  *Id.*  Here, Plaintiff alleges claims of fraud, promissory estoppel, and violations of the Kentucky Consumer Protection Act, all of which similarly require proof of reliance.  *Grayiel v. AIO Holdings, LLC*, 648 F. Supp. 3d 812, 868 (W.D. Ky. 2022) (quoting *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (fraud); *Res-Care, Inc. v. Omega Healthcare Invs., Inc.*, 187 F. Supp. 2d 714, 718 (W.D. Ky. 2001) (citing *Meade Const. Co. v. Mansfield Commercial Elec.*, 579 S.W.2d 105, 106 (Ky.1979)) (promissory estoppel); *M.T. v. Saum*, 7 F. Supp. 3d 701, 705 (W.D. Ky. 2014) (citing *Am. Motors Corp. v. Addington*, 1984 WL 588048 (Ky. App.1984)) (Kentucky Consumer Protection Act).

Plaintiff's theory of reliance and of the case is personal to her.  Her deposition testimony shows that her claims arise from her beliefs about what she should have been charged based on what she had been previously charged and what she believed was the

appropriate charge.  (*See generally* Doc. # 61).  Specifically, Plaintiff testified that while she could have looked up the price she would be charged for her hospital visit, she did not because she had a "baseline" of what she would be charged based on the births of her previous two children.  (*Id.* at 111-12).  Then, when pushed, Plaintiff was asked "[s]o the case is the fact that you don't like that all-inclusive rate; am I understanding it correctly?" to which she answered, "Right."  (*Id.* at 151).  Proof of what Plaintiff believed based on what she was told by St. Elizabeth or the information that she had access to before her procedure are personal to her and would not necessarily prove the claims of the class.  *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).  Therefore, reliance is a predominate issue that requires individualized proof and defeats certification of a 23(b)(3) class.

### iii.    Damages

Finally, the issue of individualized damages defeats predominance.  While Plaintiff is correct that individual questions of damages alone do not defeat class certification, questions regarding damages can still "defeat predominance when they are accompanied by 'significant individualized questions going to liability.'"  *Woodall,* 2021 WL 5298537, at *8 (6th Cir. Nov. 15, 2021) (*quoting Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1240 (11th Cir. 2016)).  Here, where there are already individualized questions going to liability, the issue of individualized damages will support a finding that individual questions predominate over common questions.

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws" where there are questions common to the class.  *Amchem*, 521 U.S. at 625 (citing Adv. Comm. Notes, 28 U.S.C.App., p. 697).

However, courts should tread lightly when "individual stakes are high and disparities among class members great." *Id.* at 625. This is such a case. Therefore, the Court concludes Plaintiff has not met her burden of showing the predominance requirement of Rule 23(b)(3) is met. !!

### 4.   *Adequate Representation*

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625-26 (1997) (citing *Falcon* at 157-158, n. 13). Therefore, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170, 183 (3d Cir. 2012)). Adequacy of representation under Rule 23(a) is based on two factors: "1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* at 721 (6th Cir. 2013) (quoting *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 757 (6th Cir. 2013)).

Here, neither factor for adequacy of representation is met. First, Plaintiff's employment with Deters Law is a significant conflict of interest. *See Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90, n. 7 (7th Cir. 1977) ("a plaintiff associated with the putative class attorney's law firm cannot adequately protect class members interests.") (collecting cases). A number of relationships can give rise to a conflict of interest for purposes of class certification. The Sixth Circuit has held that "the roles of class representative and of class attorney cannot be played by the same person" because this presents an

"inherent conflict of interests."  *Turoff v. May Co.*, 531 F.2d 1357, 1360 (6th Cir. 1976). This holding is based on the fact that in this situation, "the financial recovery for reasonable attorney's fees would dwarf the individual's recovery as a member of the class" and so "the financial interests of the named plaintiffs and of the class are not coextensive."  *Id.*  This same analysis applies here.  As Defendant argues, and the Court agrees, this relationship between Plaintiff and class counsel is a conflict of interest because Plaintiff is incentivized to place the interests of class counsel over that of the class given that the potential financial recovery for class counsel is much higher than Plaintiff's as an individual.  As an employee of class counsel, Plaintiff may share in the financial benefits awarded class counsel.

Other circuits have considered similar relationships between the class representative and class counsel and found they present a conflict of interest.  In *Shroder v. Suburban Coastal Corp.*, the Eleventh Circuit concluded that an employee of the law firm could not adequately represent the class.  729 F.2d 1371, 1375 (11th Cir. 1984); *see also Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 92 (7th Cir. 1977) (applying *Turoff* and concluding that adequate representation is not met when plaintiff is the brother of class counsel); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003) (long-standing personal friendship and former financial relationship between plaintiff and class counsel created conflict of interest).

Plaintiff does not adequately address this conflict of interest.  Plaintiff initially argued in her Motion that "Drake Law is not counsel in this case; the only counsel are Alan Statman, Esq. and Robert Croskery, Esq."  (Doc. # 78 at 29).  In Reply, Plaintiff stated Defendant's arguments of inadequate representation were "soundly defeated" by

refuting Defendant's factual background.  (Doc. # 92 at 18).  Presumably, Plaintiff is referring to her clarifications that Deters Law is "defunct," Drake Law did not influence the writing of these briefs "in any way," and "[n]o one from the Drake Law firm is proposed as class counsel."  (*Id.* at 9).

However, these statements are insufficient based on the facts of this case.  The following facts are undisputed: the initial and Amended Complaints were filed by Mr. Romeo of Deters Law.  (Doc. #19 at 21).  On August 9, 2022, Mr. Statman filed a Notice of Appearance on behalf of Plaintiff.  (Doc. # 22).  In his signature, Mr. Statman noted an Of Counsel relationship with Deters Law.  (*Id.*).  On September 2, 2022, Mr. Statman filed an Amended Entry of Appearance, this time noting an Of Counsel relationship with Deters Law. Co. II, P.A.  (Doc. # 25).  Then on July 11, 2023, Robert F. Croskery filed a Notice of Appearance on behalf of Plaintiff.  (Doc. # 43).

Testimony from Plaintiff adds more color to these relationships.  On July 17, 2023, Defendant took Plaintiff's deposition.  (*See* Doc. # 61).  Plaintiff testified that she worked as a paralegal for Drake Law at that time, which was previously named Deters Law.  (*Id.* at 61-62).  Further, she confirmed that her W-2s from 2021 and 2022 were from Deters Law Firm Co. II, P.A.  (*Id.* at 63).  In 2023, she received pay stubs from Deters Law, and then from Drake Law once the name of the firm had changed.  (*Id.* at 65-66).

In her Deposition, Plaintiff further testified about Mr. Romeo and Mr. Statman's relationship with Deters Law.  Plaintiff noted that Mr. Romeo had since passed away and Mr. Statman had taken over the case.  (*See id.* at 69).  Plaintiff further testified that she had met Mr. Statman multiples times outside his work on this case because of his contractual relationship with Deters Law.  (*Id.* at 70).  She stated that Mr. Statman is not

part of the firm.  (*Id.*).  Rather, Mr. Statman had been contracted to assist Deters Law on a specific case, which Plaintiff was also assigned to as a paralegal.  (See *id.*).  Upon questioning about Mr. Croskery's relationship with the case and Deters Law/Drake Law, Plaintiff similarly testified that Mr. Croskery is a contract attorney with Deters Law/Drake Law, just like Mr. Statman.  (*Id.* at 71-72).

When asked directly whether Drake Law, Plaintiff's employer, would be class counsel in this case, Plaintiff answered affirmatively.  (*Id.* at 167).  This shows that regardless of Mr. Statman and Mr. Croskey's stated affiliations, Deters Law/Drake Law still has a financial stake in this case.  Plaintiff states in Reply that "Defendant's fixation on Sarah York's initial lay understanding at her deposition, on which they spend several pages, is puzzling. Her belief that Deters I is the same as Deters II is the same as Drake law is clearly legally incorrect."  (Doc. # 92 at 10, n. 9).  However, this argument misses the point.  Even if it is legally incorrect that the law firms are the same, as long as the named Plaintiff believes they are the same, as Plaintiff testified to here, the conflict of interest exists because there is a risk that she will prioritize the financial interests of class counsel over the interests of the class.  Renaming the firm or switching to attorneys with a contractual relationship with Deters law does not cure this conflict.  According to her deposition testimony, Plaintiff's understanding is that the case is being litigated by her employer.  And given class counsel's relationship with Deters Law, it functionally is.

Second, Plaintiff has not shown that she can vigorously prosecute the interests of the class.  As noted by Defendant, the procedural history in this case is replete with continued delays and confusion.  Most recently, among other filings, Plaintiff requested an extension of discovery deadlines and leave to file a second amended complaint.

(Docs. # 50, 51, 54, 55, 73).   Magistrate Judge Smith concluded that Plaintiff had not shown good cause for this second extension nor for entry of a second amended complaint and denied the Motions.  (*See* Doc. # 97 at 10).  In her Order, Judge Smith conducted a thorough analysis of the procedural history of this case thus far, noting Plaintiff's "lack of diligence in pursuing the discovery depositions" and further stating that "York cannot use her lack of diligence in pursuing the depositions to now substantiate her claimed need to file an amended pleading after the deadline to do so has expired.  Put simply, York fails to appreciate the role her lack of diligence played in her failure to meet the deadlines to amend pleadings and complete discovery."  (*Id.* at 24).[3]

This lack of diligence gives the Court pause when considering whether Plaintiff can adequately represent the interests of the class.  Because class members will be bound by the judgment in this case, "the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (citing *Hansberry v. Lee,* 311 U.S. 32, 42-43, 45 (1940).  Rule 23 must be "applied with the interests of absent class members in close view."  *Amchem*, 521 U.S. at 629.

Plaintiff does not adequately rebut these assertions in reply.  Plaintiff only attempts to differentiate one of the many cases cited by Defendant.  Plaintiff describes *Harriston v. Chicago Tribune,* 992 F.2d 697 (7th Cir. 1993) as "ancient" and urges this Court not to consider it.  (*See* Doc. # 92 at 18).  *Harriston* was cited by the Defendant for the

---

[3]  Plaintiff also notes the death of her previous attorney in Reply, but as Judge Smith noted in her Order, current class counsel was hired before his death and "the record reflects that discovery proceeded in a rather normal fashion before and after the death of prior counsel."  (*See* Doc. # 97 at 16-17).  While the Court is sympathetic, class counsel cannot now use the death of the prior lead counsel as an excuse for missing deadlines and further delays.

proposition that a delayed motion for class certification is a reason for denial.  But as Defendant argues, and the Court agrees, given the procedural history here, "Plaintiff's failure to vigorously prosecute this case goes far beyond the time it took her to actually move for certification."  (Doc. # 82 at 35).

Beyond mischaracterizing Defendant's use of the *Harriston* case, Plaintiff additionally seeks to hide behind conclusory statements that do not address Defendant's arguments.  Plaintiff states in Reply that:

> Defendant chooses, perhaps wisely, not to meet this issue [of class counsel's qualifications] head-on, instead making snide and ridiculous accusations that a "puppet master" controls attorneys A.J. Statman and Robert Croskery. This mysterious "puppet master" will supposedly co-opt their skills, extinguish their ethics, and somehow evade the required oversight of this Court. The proper response, in a word? Balderdash.

(Doc. # 92 at 18-19).  "Balderdash," without more, does not help Plaintiff meet her burden of showing adequate representation.

Adequate representation is a fact intensive inquiry.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 637 (1997) (J. Breyer, concurring) (citing 7A Wright, Miller, & Kane, Federal Practice and Procedure § 1765, at 271).  And the Court considers these facts with heightened scrutiny given that Plaintiff seeks to certify a 23(b)(3) settlement class.  *See In re Dry Max Pampers Litig.*, 724 F.3d at 721-22 (citing *In re Gen. Motors Corp. Pick-Up Litig.,* 55 F.3d 768, 795 (3rd Cir. 1995)).  The Court must make the decision of class certification with the absent class members in mind.  *Amchem*, 521 U.S. at 629. Given the unique facts of this case, the Court concludes Plaintiff has not met her burden to show she can adequately represent this class. ‼

! 

‼

20

### 5.    Superiority

To certify a 23(b)(3) action, Plaintiff must also satisfy the superiority requirement. The Court may look to the following factors in deciding whether this requirement is met: "(1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the existence of pending litigation concerning the same controversy; (3) the desirability of concentrating the litigation of the claims in this forum; [and] (4) the difficulties likely to be encountered in the management of the class action." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757-58 (6th Cir. 2013).  Here, superiority is not met for many of the same reasons predominance is not met.  *See Tarrify Props., LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1106 (6th Cir. 2022).   As discussed in section II.B.3., *supra*, individual questions predominate, which means the members of the class have a strong interest in controlling each individual action.  *Id.*

### 6.    Ascertainability

Ascertainability is "an implied requirement that the putative class members can be readily identified based on the class definition."  *Tarrify Properties, LLC*, 37 F.4th at 1106. "For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (quoting *Moore's Federal Practice* § 23.21[3]).  "If 'mini-trials' become necessary to determine who is in and who is out, the class-action vehicle imposes inefficiencies rather than ameliorates them."  *Tarrify Properties, LLC*, 37 F.4th at 1106 (citing *Sandusky Wellness Ctr.*, 863 F.3d at 471-74).   While each requirement of Rule 23 must be considered individually, many times the analysis of various requirements will overlap.  *See id.*

Here, the ascertainability requirement is not met for many of the same reasons the requirements of typicality, predominance, and superiority are not met.  *See id.* (citing *Sandusky Wellness Ctr.*, 863 F.3d at 471-72) ("courts have explained that elusive class composition often undermines efforts to meet the ascertainability, predominance, and superiority requirements.").   The claims alleged by Plaintiff require an individualized assessment of liability, as discussed above.  *See id.*  (ascertainability not met where the claim would require "an independent and individualized assessment of each absent class member's property."). !!

Judge Smith also pointed out the changes in class definition, stating: "York's continual development of her complaints throughout the course of this litigation thus far also demonstrates the ever-varying theory of the case. Consider, for example, the progression of the proposed class definition, despite the fact that the underlying allegations remained materially the same throughout each complaint."  (Doc. # 97 at 25).  Given that Plaintiff has struggled through the over two and a half years of this litigation to define a suitable class, and that the claims asserted by Plaintiff on behalf of the class require individualized proof, the Court concludes ascertainability is not met.

## III.   CONCLUSION

Plaintiff has not shown that the class claims would rise and fall together or that common issues predominate as is necessary to certify a 23(b)(3) class.  Even if Plaintiff had met this burden, her Motion for Class Certification would still be denied because of the clear conflict of interest between the named Plaintiff and the class members.  Instead of adequately addressing Defendant's substantive arguments, Plaintiff's counsel has

chosen to use its Reply primarily as a vehicle to make snide comments and references, which do not assist the Court in making its decision on this Motion.

For the reasons stated herein, the Court concludes that Plaintiff has not met her burden to show class certification would be proper.  Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Class Certification (Doc. # 78) is **DENIED.**

This 22nd day of April, 2024.



Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\ORDERS\Cov2021\21-125 MOO re Class Cert.docx